A05A1647. S. S. AIR, INC. et al. v. CITY OF VIDALIA.

(628 SE2d 117)

MILLER, Judge.

Aileen Nobles and S. S. Air, Inc. ("S. S. Air"), hold ownership interests in an aircraft hangar that was installed on real property owned by the City of Vidalia (the "City"). Following a hearing, the

---

Superior Court of Toombs County entered an order allowing the City to remove the hangar from its property at appellants' expense. S. S. Air and Nobles appeal, contending that this ruling was erroneous. We discern no error and affirm.

The relevant evidence reveals that the City allowed Piggly Wiggly Southern, Inc. ("Piggly Wiggly"), to build an aircraft hangar on City property that was being used for an airport. Nobles purchased the hangar from Piggly Wiggly, and in 1998 entered into a lease-purchase agreement with S. S. Air. S. S. Air used the hangar to store airplanes, boats, light fixtures, and office equipment; and it has charged rental fees to others whom it has allowed to use the hangar. The hangar is bolted to a concrete slab, allowing for its disassembly, removal, and reassembly elsewhere.

No formal lease agreement exists between the City and S. S. Air and Nobles that requires them to pay rent to the City for allowing them to maintain their hangar on City property. No one has paid rent to the City in connection with the hangar since 2001.

The City pursued purchasing the hangar, but when these efforts proved unsuccessful, the City decided that it simply wanted to have the hangar removed from its property. The City then filed a petition for dispossessory and for injunctive relief to compel S. S. Air and Nobles to remove the hangar. Following a hearing, the trial court ordered S. S. Air and Nobles to remove the hangar at their expense. S. S. Air and Nobles appealed this ruling to the Supreme Court of Georgia, but the case was then transferred to this Court.

1. The central issue on appeal is whether the trial court properly determined that a landlord-tenant relationship existed between the City and appellants that would permit the removal of appellants' hangar from City property at appellants' expense. For the reasons that follow, we hold that the trial court did not err in reaching its conclusions.

A landlord-tenant relationship "is created when the owner of real estate grants to another person, who accepts such grant, the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor." OCGA § 44-7-1 (a). A landlord-tenant relationship may exist even where the purported tenant is not required to pay rent, since "[t]he payment of rent is not essential to the creation of a tenancy at will." (Citation and punctuation omitted.) *May v. May*, 165 Ga. App. 461, 462 (1) (300 SE2d 215) (1983). It is undisputed that the City owned the property on which appellants maintained their hangar and that the appellants had been maintaining the hangar on City property rent free since 2001. Evidence supported the trial court's conclusion that a landlord-tenant relationship existed between the City and appellants. See id.

As a landlord, the City had the right to seek possession of its land from its tenants. See OCGA §§ 44-7-50; 44-7-51.[1] Indeed, appellants had no formal agreement with the City entitling them to extend their stay on City property, and the City could therefore elect to remove them at any time. As tenants at will, appellants were obligated to remove any "trade fixtures" from the landlord's property upon notification by the City of the expiration of the lease term:

> During the term of his tenancy or any continuation thereof or while he is in possession under the landlord, a tenant may remove trade fixtures erected by him. After the term and his possession are ended, any trade fixtures remaining will be regarded as abandoned for the use of the landlord and will become the landlord's property.

OCGA § 44-7-12; see also *Youngblood & Harris v. Eubank*, 68 Ga. 630, 634 (1882) ("[T]he tenant must remove his fixtures before he quits possession on the termination of his lease. And when a tenant quits possession without removing a fixture, he is understood as making dedication of it to the landlord. . . . [Cits.]").

"In Georgia, trade fixtures are defined as articles annexed to the realty by a tenant for the purpose of carrying on a trade. Even though a structure may be large and attached to the premises, it will nevertheless be considered a trade fixture if the tenant installed the structure for purposes of carrying on its business." (Footnote omitted.) *Lay Bros., Inc. v. Golden Pantry Food Stores*, 273 Ga. App. 870, 873 (1) (616 SE2d 160) (2005). Here, the hangar was used in connection with both S. S. Air and Nobles' efforts to generate rental income, and for S. S. Air's storage of office equipment. The hangar was bolted to the ground in such a way that it could be disassembled and rebuilt elsewhere. Evidence supports the conclusion that, despite its size, the hangar was a trade fixture. Id.; see also *Carr v. Ga. R.*, 74 Ga. 73, 81 (1884) (brick depot building used in connection with tenant's business was a "trade fixture," which tenant was obligated to remove before abandoning premises). As such, appellants, as tenants at will, were obligated to remove the hangar when the lease term ended at the request of the City.

The trial court did not err in concluding that a landlord-tenant relationship existed between the City and appellants. Accordingly,

---

[1] Appellants failed to raise below their arguments relating to the City's alleged failure to meet all procedural requirements of the dispossessory statutes. Therefore, such arguments will not be addressed here. *Padilla v. Melendez*, 228 Ga. App. 460, 461 (1) (491 SE2d 905) (1997) ("We do not consider issues raised for the first time on appeal, because the trial court has not had opportunity to consider them.") (citation and punctuation omitted).

appellants were obligated to remove their trade fixture — in this case the aircraft hangar — at their own expense upon the request of the City. See OCGA § 44-7-12.

2. In light of our holding in Division 1, we need not address appellants' remaining enumerations.

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED FEBRUARY 22, 2006 —
RECONSIDERATION DENIED MARCH 9, 2006 —

*Smith & Jenkins, Wilson R. Smith*, for appellants.
*Spivey, Carlton & Edenfield, J. Franklin Edenfield*, for appellee.