**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 8, 2019**

# In the Court of Appeals of Georgia

A19A0406. ELROD v. RELIANCE DEVELOPMENT COMPANY, LLC.

BROWN, Judge.

Reliance Development Company, LLC filed an action to quiet title against James T. Elrod, Jr. and Bank of America. Elrod appeals the trial court's entry of default judgment against him, arguing that (1) service by publication was not proper in this case; (2) the trial court erred in permitting Bank of America and Reliance to enter a consent judgment which entered final judgment against him; and (3) the trial court erred in granting Elrod's appeal in forma pauperis, but stipulating that his appeal was limited to the appeal of the default judgment entered against him. For the reasons explained below, we vacate both the default judgment and the consent judgment, and remand the case.

The instant appeal stems from the sale of certain real property at 1175 Windsor Parkway NE, Atlanta, Georgia, 30319 ("the Property"), and the subsequent dispute over title to the Property. The record shows that Elrod bought the Property in 2005. In 2008, Elrod refinanced the loan he had obtained to finance his purchase of the Property,[1] by obtaining another loan from Primary Capital Advisors LC ("PCA"). To secure repayment of the second loan, Elrod conveyed the Property to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for PCA via a security deed. MERS transferred the security deed to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP ("BAC") via an assignment in 2011. Elrod defaulted under the terms of the security deed, and on July 7, 2015, Bank of America, as successor by merger to BAC, conducted a non-judicial foreclosure sale of the Property at which Bank of America was the highest bidder. Bank of America then executed a deed under power, conveying the Property to itself.

---

[1] Reliance alleges that Elrod obtained a loan from First Franklin to finance the purchase of the Property, and that in order to secure repayment of the loan, Elrod executed a security deed in favor of First Franklin. However, there are no documents in the record purporting to show this.

Elrod has since filed multiple lawsuits related to the security deed and subsequent foreclosure.[2] Elrod also filed a 78-page "Affidavit Regarding Claim of Lien Equitable Notice and Affidavit" in the real estate records related to the Property on April 6, 2016. On May 4, 2016, Reliance purchased the Property from Bank of America via limited warranty deed. On June 9, 2016, the day before the warranty deed was recorded, a "Corrective Warranty Deed" purporting to convey the Property from Bank of America to Elrod was recorded in the Fulton County Deed Book. The Corrective Warranty Deed stated that it was given in exchange for no consideration.

On April 11, 2017, Reliance filed its "Complaint for Declaratory Judgment, Petition to Remove Cloud from Title, Equitable Relief, Breach of Warranty of Title, and Attorneys' Fees" in Fulton County Superior Court against Bank of America and Elrod. Reliance sought a declaration that it is the owner of the Property in fee simple and that Elrod has no right of title or possession to the Property. Reliance alleged that

---

[2] In 2010, Elrod filed a complaint in the United States District Court for the Northern District of Georgia against BAC, PCA, and others in relation to the security deed. He voluntarily dismissed the action. In 2015, Elrod filed another complaint related to the security deed in the United States District Court for the Northern District of Georgia against Bank of America. The district court dismissed Elrod's complaint for failure to state a claim. In 2017, Elrod filed a third complaint related to the security deed in the United States District Court for the Northern District of Georgia against PCA, Bank of America, Reliance, and various others, including a Fulton County magistrate judge. Elrod voluntarily dismissed the complaint.

3

the corrective warranty deed filed was fraudulent and that Elrod had forged the signatures.

On May 2, 2017, a sheriff from Fulton County unsuccessfully attempted to serve Elrod at the address of record he had provided during the pendency of the federal action he filed in 2017. The entry of service states that a "diligent search [was] made and defendant Elrod James T., Jr. [was] not to be found in the jurisdiction of this Court. Address in DeKalb Co." On July 5, 2017, a sheriff from DeKalb County unsuccessfully attempted to serve Elrod at the same address. The entry of service states that a "[d]iligent search [was] made and defendant [was] not to be found in the jurisdiction of this Court. [U]nable to make contact after several attempts."

On August 11, 2017, Reliance filed a motion to serve Elrod by publication pursuant to OCGA § 9-11-4 (f) (1) (B). In its motion, Reliance alleged that it had conducted Internet searches in an attempt to locate Elrod. Additionally, Reliance alleged that in its extensive correspondence with Elrod, he had only given one address, which was not a physical address, but a Post Office box, and that this same address was listed as his address of record during the 2017 federal action. Reliance attached an affidavit of its attorney who averred that he had "caused to be requested the Sheriff of Fulton County to locate and serve James T. Elrod, Jr. at the Property

4

[1175 Windsor Parkway NE, Atlanta, Fulton County, Georgia, 30319] to no avail." No entry of service was attached to the motion showing that the sheriff had attempted service on Elrod at the Property. The trial court granted Reliance's motion for service by publication on August 18, 2017.

On October 16, 2017, Elrod filed a "Special Appearance Motion to Dismiss," in which he alleged that he learned of Reliance's action "while doing background work on an unrelated case." He further alleged the following: that Reliance had not attempted to serve him; that he could have been served "at the UPS Store, where [his] mail is delivered, much like a Post Office Box"; that service was not attempted at his known residence, the Property listed in Reliance's complaint; and that if Reliance had made a diligent search, it would have properly served him at the address for the Property. Elrod attached a copy of his Georgia driver's license, showing his address as the Property address.

In its response to Elrod's motion, Reliance alleged that there was a delay in obtaining the Notice of Service by Publication from the clerk of court and having it run in the legal organ in accordance with Georgia law.[3] As a result, Reliance had

---

[3] The trial court order granting service by publication was signed and filed on August 18, 2017. The notice for service by publication is dated September 7, 2017. The fourth and final publication occurred on November 1, 2017, more than 60 days

withdrawn the prior affidavit of its attorney and filed a new affidavit, along with the affidavit of a private process server retained to attempt service on Elrod at the Property. In his affidavit attached to Reliance's response, the process server averred that the following occurred on November 16, 2017:

> Upon arrival I knocked on the door and observed a white male inside the location getting up from a seated position and pe[e]king at me from across the room then slowly walking across the room to the right of the front door. It appeared that the unidentified male was trying to move slowly so that I would not see him through the glass door. I then knocked on the door again and rang the doorbell. A moment or two later I observed the same male subject peeking out from the right side of the room and looking at me. I then walked to the right side of the residence, which is almost entirely made of windows, hoping to see the subject and get his attention but observed no one. I then returned to the front door and again knocked and rang the doorbell but did not receive a response. I continued to knock and ring the doorbell over the next ten minutes or so but never observed the male or anyone else.

The process server also averred that he attempted service again on November 17, 2017, but no one answered the door. Reliance then filed a renewed and amended

---

after the trial court's order granting publication. Accordingly, the publication did not comply with OCGA § 9-11-4 (f) (1) (C).

motion for service by publication, which the trial court granted on December 5, 2017. Service by publication was subsequently effected.[4]

On February 2, 2018, Elrod filed a notice of special appearance in which he objected to service by publication.[5] He also pointed out that the trial court had yet to rule on his prior Motion to Dismiss, filed October 16, 2017. Elrod alleged that Reliance had never attempted to personally serve him, but that he had learned that the trial court granted Reliance's amended motion for service by publication while "in the Fulton County Courthouse for an unrelated matter." He also alleged that the process server's affidavit was "less than truthful," and implied that the notary's signature on the affidavit was forged based on hearsay.

Reliance filed a motion for default judgment as to Elrod on February 22, 2018, alleging that Elrod had failed to file or serve an answer to the complaint within 60 days of the date of the order granting service by publication and that 15 days had passed since the date of default. Elrod filed a response in opposition to Reliance's

---

[4] The notice of service by publication was dated December 7, 2017, by the clerk. The notice was published on December 15, 2017, December 22, 2017, December 29, 2017, and January 5, 2018, in the Daily Report.

[5] Elrod also asked the trial court to strike the process server's affidavit as well as the affidavit of Reliance's attorney, to set aside Reliance's amended motion for service by publication, and to dismiss Reliance's complaint.

motion for default and requested that the trial court set aside any default. On May 25, 2018, the trial court entered a "Consent Judgment and Final Order as to Bank of America, N.A.," in which the court declared Reliance the sole owner of the Property. On June 7, 2018, the trial court entered an order of default judgment against Elrod.

1. Elrod argues that the trial court erred in granting his appeal in forma pauperis, but stipulating that the appeal was limited to appeal of the default judgment entered against him. Elrod fails to support this enumeration of error with any argument, citation of authority, or record citations, and it is therefore deemed abandoned. See Court of Appeals Rule 25 (c) (2). See also *Bennett v. Quick*, 305 Ga. App. 415, 416-417 (699 SE2d 539) (2010). Nonetheless, we do not read the trial court's order as limiting our authority to consider any argument properly raised with regard to the consent judgment.

2. In related enumerations of error, Elrod contends that service by publication was not proper in this case. We agree.

"Factual disputes regarding service are to be resolved by the trial court, and the court's findings will be upheld if there is any evidence to support them." (Citation and punctuation omitted.) *Styles v. Spyke Ten, LLC*, 342 Ga. App. 122 (802 SE2d 369) (2017). Here, Reliance proffered evidence suggesting that Elrod was evading

personal service and, thus, the trial court did not err in granting Reliance's motion for service by publication pursuant to OCGA § 9-11-4 (f) (1) (A).[6] However, "[OCGA § 9-11-4 (f) (1) (C)] requires the clerk of court to mail a copy of the order for service by publication, notice of publication, and the complaint to [Elrod]'s last known address and to certify such action on the complaint filed in the case." (Emphasis omitted.) *Vasile v. Addo*, 341 Ga. App. 236, 241 (2) (800 SE2d 1) (2017). Elrod averred that he never received these documents from the clerk of court, and the record contains no evidence of the clerk's certification or even evidence that Reliance's attorney directed the clerk of court to mail the documents to Elrod's alleged address.

---

[6] Elrod also argues that Reliance has failed to follow Rule 4 (m) of the Federal Rules of Civil Procedure, which states that

> [i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civil P. 4 (m). However, this a Federal Rule of Civil Procedure, which does not apply to actions filed in courts of the State of Georgia.

Reliance argues that we must presume that the clerk here complied with OCGA § 9-11-4 (f) (1) (C) because "there is a general presumption that public officials perform all of their duties as required by law." This Court rejected the same argument made by the plaintiff in *Vasile*:

> [The plaintiff] offers no proof that the clerk mailed the documents and instead argues that clerks and deputy clerks of court are public officers who are presumed to discharge their duties properly. In the cases upon which [the plaintiff] relies in support of this argument, however, the documents at issue were certified by and on file with the respective clerks of court and neither address the requirements for service by publication. See *Taylor v. Young*, 253 Ga. App. 585, 586 (1) (b) (560 SE2d 40) (2002) (addressing validity of order appointing probate court clerk as hearing officer); *Oller v. State*, 187 Ga. App. 818, 820 (2) (371 SE2d 455) (1988) (holding sufficient proof of prior conviction based upon authenticated records "certified as a true and correct copy of the original 'indictment, plea and sentence'"). Additionally, in both cases, it was noted that the authenticated records of the office of the clerk of court are presumed to speak the truth. *Taylor*, supra; *Oller*, supra. In this case, there is a complete absence in the record of any entry by the clerk of court showing that the documents were mailed.

341 Ga. App. at 241 (2). Similarly, here, there is a complete absence in the record of any entry by the clerk of court showing that the documents were mailed to Elrod. "[O]ur Supreme Court has held that service must be made as provided by the Code

10

section, and 'substantial compliance' in matters involving service of process is insufficient." (Footnote omitted.) *Hutcheson v. Elizabeth Brennan Antiques & Interiors, Inc.*, 317 Ga. App. 123, 127 (1) (730 SE2d 514) (2012). Indeed, "there is no authority to dispense with the clear requirements of the Code section merely because the defendant may otherwise obtain knowledge of the filing of the action." (Footnote and punctuation omitted.) Id. Accordingly, the trial court lacked personal jurisdiction over Elrod, and we must vacate the trial court's order entering default judgment against him. See *Vasile*, 341 Ga. App. at 242 (2), 244 (3) (partially reversing trial court's denial of motion to set aside default judgment where no evidence in record showed clerk of court had mailed documents to defendant); *Hutcheson*, 317 Ga. App. at 127-128 (1) (while trial court did not err in granting the motion for service by publication based on evidence defendant evaded personal service, service by publication did not comply with statute because clerk of court conceded she did not mail the documents); *Focus Healthcare Med. Ctr., Inc. v. O'Neal*, 253 Ga. App. 298, 299 (558 SE2d 818) (2002) ("When there has been no actual service, the judgment can successfully be collaterally attacked for lack of personal jurisdiction as void, because there has been no 'real' default for failure to answer a complaint that was never served. . . .").

11

3. Elrod argues that the trial court erred in entering the consent judgment as to Bank of America because it is a final judgment in the case, affecting his rights to the Property, to which he did not consent.[7] We agree.

The consent judgment here declares that Reliance is the sole owner of the Property in fee simple. It also declares the "Forged Deed" and Elrod's affidavit recorded in the records for the Property "a cloud upon [Reliance]'s title" and proceeds to cancel them. Finally, the consent judgment declares that Reliance is entitled to possession of the Property and that Elrod has no right to possession of the Property. Thus, it is clear that the consent judgment entered into by Bank of America and Reliance, and not consented to by Elrod, affects Elrod's rights to the Property. In spite of this, Reliance argues that Elrod lacks standing to challenge the consent judgment because he is not a party to it. It defies logic to state that a person is bound by the terms of an agreement to which he has not agreed, but may not challenge the agreement because he is not a party to it. Accordingly, the consent judgment is

---

[7] On June 21, 2017, Reliance moved for default judgment as to Bank of America. Nothing in the record shows that default judgment was actually entered against Bank of America. Counsel for Bank of America filed an entry of appearance in the case on May 23, 2018, two days prior to the entry of the consent judgment.

vacated to the extent it purports to enter final judgment binding on Elrod.[8] See *Wilson v. Norfolk S. Corp.*, 200 Ga. App. 523, 527 (5) (a) (2) (409 SE2d 84) (1991) (because appellant was not a party to the consent judgment entered in related case and had not consented to it, the consent judgment and the determination therein that the settlement was "just and fair" was not binding upon appellant). See also *Container Corp. of America v. Charlton County*, 259 Ga. 389, 391 (1) (383 SE2d 105) (1989).

4. Elrod contends that the trial court erred by finding — with no hearing or evidence — that the Corrective Warranty Deed purporting to convey the Property from Bank of America to Elrod was forged. We disagree.

> [A] consent judgment differs from a judgment rendered on the merits in that it results from an affirmative act of the parties rather than the considered judgment of the court following litigation of the issues. A consent judgment is one entered into by stipulation of the parties with the intention of resolving a dispute, and generally is brought to the court by the parties so that it may be entered by the court, thereby compromising and settling an action.

---

[8] We note that Reliance and Bank of America never filed a motion for consent judgment, nor was a hearing held at any point in this case. The consent judgment abruptly appears in the record, signed by the trial court.

13

*Brown & Williamson Tobacco Corp. v. Gault*, 280 Ga. 420, 423 (3) (627 SE2d 549) (2006). A consent judgment resolves the issues by agreement of the parties and obviates the necessity of proof of the agreed-upon facts or resolution thereof by a jury. *Trust Co. of New Jersey v. Atlanta Aluminum Co.*, 149 Ga. App. 605, 610 (3) (255 SE2d 82) (1979). See also *Estes v. Estes*, 192 Ga. 94, 96-97 (14 SE2d 681) (1941). Thus, to the extent the trial court entered the consent judgment without requiring proof of facts therein, it was not error. But, given our holding in Division 3, this argument is moot.

5. For the reasons discussed above, we vacate the default judgment entered against Elrod, vacate the consent judgment between Bank of America and Reliance, and remand the case for further proceedings. Our decision in this appeal is not based on the underlying merits of the case. Reliance may still effect service by publication on Elrod pursuant to OCGA § 9-11-4 (f) (1), Bank of America may still offer sworn evidence that it did not execute or file the allegedly forged corrective deed, and Reliance may still obtain a default judgment against Elrod assuming the prerequisites are met. But all of these things must be done in accordance with the law and the procedures set forth therein.

*Judgments vacated and case remanded. Barnes, P. J., and Mercier, J., concur.*